| | | |
|---|---|---|
| CEMENT MASONS LOCAL 527, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 4:14-cv-1030-JAR** |
| v. | ) | |
| | ) | |
| STIKA CONCRETE CONTRACTING | ) | |
| CO., INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion for a Creditor's Bill and to Pierce the Corporate Veil. (Doc. No. 46.) On January 8, 2016, the Court entered a show cause order directing Defendant Stika Concrete Contracting Co., Inc. ("Defendant" or "Original Stika") to respond to Plaintiffs' motion and to show cause why the corporate veil should not be pierced. Plaintiffs confirmed with the Court that they served said order on both Original Stika and nonparty Stika Concrete and General Contracting ("New Stika"), the purported alter-ego of Original Stika. (Doc. No. 50.) To date, no response has been filed. For the reasons stated herein, Plaintiffs' motion will be granted.

## BACKGROUND

On October 29, 2014, the Court entered default judgment in favor of Plaintiffs and against Original Stika in the amount of $16,587.48 for delinquent contributions and union dues, attorneys' fees, court costs, and audit costs and fees owed under the terms of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. (Doc. No. 13.) Original Stika went out of business in early 2015 as a result of financial pressure. (Deposition of Mary Skaggs ("Skaggs Deposition") at 6.) Thus, Plaintiffs report that to date, they have collected only

$7,000.00 on the judgment entered, and $9,587.48 remains outstanding. (Doc. No. 47 at 1.) In an attempt to collect the remainder of the amount owed them, Plaintiffs noticed the deposition of a representative of Original Stika, but no representative appeared. After the Court entered an order scheduling a contempt hearing, Original Stika produced its principle, Mary Skaggs, for a deposition. Based on Ms. Skagg's testimony during that deposition, Plaintiffs bring the present motion for a creditor's bill against New Stika. Alleging that New Stika is the alter-ego of Original Stika, Plaintiffs seek to pierce the corporate veil and obtain a creditor's bill in equity to enable them to recover from New Stika the remaining amount specified in the Court's judgment of October 29, 2014.

Original Stika was a Missouri corporation owned by Ray and Rosalyn Stika, parents of Mary Skaggs. (Skaggs Deposition at 7.) The officers and directors of Original Stika were Ray and Rosalyn Stika, Mary Skaggs, and Ms. Skagg's sister. (Skaggs Deposition at 6.) Original Stika had a business address of 10703 Tesshire Drive, and a telephone number of (314) 849-1600. In April 2015, New Stika was created. It is owned by Ms. Skaggs and her husband. Each company is or was engaged in construction and contracting work, specifically related to concrete work. According to her deposition, Ms. Skaggs plays or played a leadership role in both companies, including being responsible for day-to-day operations.

New Stika utilizes at least one truck bearing the name "Stika Concrete Contractors." Additionally, Original Stika and New Stika share at least two employees. Plaintiffs have also alleged—without refutation by either company—that a social media account owned by New Stika links to the website of Original Stika. New Stika regularly represents that it has been in business for over 50 years, but was only recently founded; Plaintiffs suggest that this is a reference to Original Stika's duration. Finally, Plaintiffs allege—again, without refutation by

Defendant—that Stika Concrete and General Contracting posts signage at its work sites with the name "Stika Concrete Contractor," with the address of 10703 Tesshire Drive and with the phone number (314) 849-1600 (the address and telephone number of Original Stika).

## DISCUSSION

A federal court "'has the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law.'" H.H. Robertson Co. v. V.S. DiCarlo Gen., 994 F.2d 476, 477 (8th Cir. 1993) (quoting United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979)). In Missouri, "the creditor's bill enables a judgment creditor to 'trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted from the property or services.'" Id. (internal citation omitted). Prerequisites to the issuance of a creditor's bill are the "existence of a judgment, the issuance of an execution against assets of the judgment debtor and a nulla bona return thereon." Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922, 925 (Mo. Ct. App. 1989). "A creditor's bill is considered the equitable equivalent of garnishment on execution and is comparable to proceedings supplementary to and in aid of execution." Shockley, 771 S.W.2d at 925 (internal citation omitted). Creditor's bill garnishees need not have been named as parties to the original action. H.H. Robertson Co., 994 F.2d at 478 (internal citation omitted).

Plaintiffs have established their entitlement to a creditor's bill against Defendant. Plaintiffs were awarded a judgment, and have not been able to fully execute on that judgment by normal means available at law. Plaintiffs' attempts to garnish the known accounts of Defendant have been unsuccessful; the attempted garnishments were returned with the response that the accounts were closed or not found. See, e.g., Doc. Nos. 35, 36. Thus, finding that Plaintiffs are

entitled to a creditor's bill, the Court turns to whether Plaintiffs have averred sufficient facts for the Court to pierce the corporate veil and allow Plaintiffs to recover against New Stika.

Courts may consider piercing the corporate veil of an entity upon a finding that the entity is the alter ego of the defendant judgment debtor. <u>Greater St. Louis Const. Laborers Welfare Fund v. Mertens Plumbing & Mech., Inc.</u>, 552 F. Supp. 2d 952, 955 (E.D. Mo. 2007). An entity is the alter ego of the defendant judgment debtor, through common control, pursuant to an analysis of the following factors: "whether the change in operations is unlawfully motivated, whether the new employer is owned or controlled by the old employer, and whether the new operator has the same business purpose, operations, equipment, customers, management, and supervision as the old operation." <u>Woodline Motor Freight, Inc. v. N.L.R.B.</u>, 843 F.2d 285, 288 (8th Cir. 1988). <u>See also</u> <u>Carpenters' Dist. Council of Greater St. Louis & Vicinity v. F.G. Lancia Custom Woodworking</u>, LLC, No. 4:06-CV-1673 CAS, 2015 WL 9269247, at *9 (E.D. Mo. Dec. 21, 2015) (addressing the relevant factors, and explaining that the veil was properly pierced, as the alter-ego companies were "substantially identical at the time [successor company] was formed and went into business"). In this district, courts have invoked a three prong test to determine whether the entity targeted is the alter ego of the named judgment debtor. First, "a creditor must show that the alter ego has 'control' of the entity's finances, policy, and business practices with respect to the transaction at issue." <u>Greater St. Louis Const. Laborers Welfare Fund v. Sunrise Const., Inc.</u>, No. 4:05-CV-481 CAS, 2009 WL 73664, at *3 (E.D. Mo. Jan. 8, 2009). Second, the creditor must show "breach of duty—that this control was used by the corporation to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights"

that caused the injury to the plaintiff.  Id. (citations omitted).  Finally, the alleged control and breach of duty must be the proximate causation of the creditor's injury.  Id.

There is sufficient evidence for the Court to conclude that New Stika is merely the alter-ego of Original Stika.  With regard to ownership and control, Mary Skaggs and her husband own New Stika; Mary Skaggs' parents owned Original Stika, and she served as an officer and director.  See N.L.R.B. v. Dane County Dairy, 795 F.2d 1313, 1322 (7th Cir. 1986) ("Familial control constitutes common ownership and control.").  Moreover, Mary Skaggs plays or played a management role in both companies, and manages the day-to-day operations of New Stika.

There is also sufficient evidence from which the Court can infer that New Stika was created with the express purpose of allowing Original Stika to avoid its obligations, including those to Plaintiffs.  When an entity, as a judgment debtor, causes the transfer of substantially all of its assets, employees, and contracts to another entity without consideration, so that the former entity is undercapitalized and unable to meet the financial obligation owing under the judgment, there is sufficient evidence for a conclusion the judgment debtor acted with an intent to commit fraud, wrongdoing, or otherwise avoid its positive legal duty owed to its creditor.  See H.H. Robertson Co., Cupples Products Div. v. V.S. DiCarlo Gen. Contractors, Inc., 789 F. Supp. 998, 1000 (E.D. Mo. 1992), aff'd, 994 F.2d 476 (8th Cir. 1993).  Here, the two companies share an exceedingly similar business purpose, namely contracting with a particular emphasis on concrete work.  They share at least two employees, and Plaintiffs have alleged that at least one commercial vehicle (equipment) was previously owned by Original Stika and now belongs to New Stika.  Additionally, the social media and web presence for the two companies is intermingled.  Original Stika ceased operations just a few months after the Court's entry of judgment, and just a few months after that, New Stika was created.  Just as the Court wrote in

<u>Lancia</u> at *9, "[t]he temporal proximity of all of these actions," convinces the Court that New Stika was established to allow Original Stika to continue in business while avoiding its obligations, including the judgment owed to Plaintiffs.

Finally, Plaintiffs have successfully demonstrated that the control and the breach of duty by Defendant proximately caused Plaintiff's injury. <u>Fleming Companies, Inc. v. Rich</u>, 978 F. Supp. 1281, 1303 (E.D. Mo. 1997). Here, the ongoing business activity of New Stika suggests that assets exist from which Plaintiffs could collect the judgment that is due them, and thus, Defendants have proximately caused Plaintiffs' loss by shifting assets to the newly-formed entity.

The facts discussed above showing that the companies share management, business purpose, operation, equipment, supervision, and ownership, establish that the corporate veil should be pierced. Moreover, the numerous similarities between Original Stika and New Stika establish that Original Stika has used New Stika to avoid payment of Original Stika's debts, including those owed to Plaintiffs as a result of the Court's earlier judgment. <u>See</u> <u>H.H. Robertson</u>, 994 F.2d at 477. Thus, the corporate veil can be pierced.

**CONCLUSION**

For the reasons more fully stated above, the Court finds that Stika Concrete and General Contracting is the alter ego of Stika Concrete Contracting Co., Inc.; that the corporate veil should be pierced to enable Plaintiffs to collect the balance of the default judgment against Stika Concrete Contracting Co., Inc. (Original Stika) from Stika Concrete and General Contracting (New Stika); and that Plaintiffs are entitled to a creditor's bill in equity to satisfy the judgment against Stika Concrete Contracting Co., Inc.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Creditor's Bill and to Pierce the Corporate Veil (Doc. No. 46) is **GRANTED**.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 18th day of May, 2016.